IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews


Civil Action No. 1:26-cv-02694-SKC-TPO

SP FRANCHISING, LLC, *et al.*,

     Plaintiffs,

 v.

3FM, L.L.C., *et al.*,

     Defendants.

---

## ORDER DENYING PLAINTIFFS'
## AMENDED MOTION FOR PRELIMINARY INJUNCTION (DKT. 11)

---

Before the Court is Plaintiffs SP Franchising, LLC and SP IP, LLC's Amended

Motion for Preliminary Injunction. Dkt. 11. The Court previously granted Plaintiffs'

request for a temporary restraining order and held an evidentiary hearing on the

request for a preliminary injunction on July 31, 2026. Dkts. 23, 24, 52.

The Court has given due consideration to the full briefing on the Motion, to

include the full briefing on the related Defendants' Motion to Dissolve Ex Parte

Temporary Restraining Order (Dkts. 33 (motion) and 39 (response)), and the evidence

received at the evidentiary hearing.[1] The Court DENIES the Motion because

---

[1] Rule 65(a) does not explicitly provide that any hearing, evidentiary or otherwise, is
required before ruling on a motion for a preliminary injunction. *See generally* Fed. R.

Plaintiffs have failed to demonstrate irreparable harm or a likelihood of success on the merits.

## BACKGROUND

The background is recounted in greater detail in the parties' respective and extensive briefing on the Motion and Defendants' related motion to dissolve the TRO. In a nutshell, Plaintiffs are the franchisor of SpeedPro Imaging Studios, a nationally recognized franchise system for large-format graphics, printing, and signage services operating under the federally registered SPEEDPRO® mark. Plaintiffs do not own any SpeedPro franchises, but rather, all SpeedPro business locations are independently owned and operated by franchisees who sign a franchise agreement.

Defendant 3FM, L.L.C. ("3FM"), operated a SpeedPro Imaging Studio in Omaha, Nebraska under a Franchise Agreement dated June 8, 2016 (the "Agreement"). In May 2026 Defendants gave Plaintiffs notice of their intent not to

---

Civ. P. 65. Nor does the Tenth Circuit require a hearing or oral argument on a motion for a preliminary injunction. *See Northglenn Gunther Toody's, LLC v. HQ8-10410-10450 Melody Lane LLC*, 702 F. App'x 702, 705 (10th Cir. 2017) ("[N]either Fed. R. Civ. P. 65(a) nor this circuit's precedent require the district court to hold an evidentiary hearing or oral argument before deciding a motion for a preliminary injunction."). A court may deny an injunction without a hearing based on the written evidence where "receiving further evidence would be manifestly pointless." 11A Charles Alan Wright et al., Federal Practice and Procedure § 2949 (3d ed. 2020). *See also Carbajal v. Warner*, 561 F. App'x 759, 764 (10th Cir. 2014) (district court within discretion to decide whether to hold an evidentiary hearing); *Reynolds & Reynolds Co. v. Eaves*, 149 F.3d 1191, 1998 WL 339465, at *3 (10th Cir. June 10, 1998) (table) (same). During the hearing, the Court heard testimony from two of Plaintiffs' witnesses, accepted offers of proof from the parties on any remaining evidence, and heard arguments from counsel.

renew the Agreement, and therefore, the Agreement expired by its terms on June 8, 2026. As of the time the Agreement expired, Defendants' license agreement with Plaintiffs ended, Defendants de-branded the Omaha location of the SpeedPro marks, SpeedPro cut off Defendants' email access and access to its Corebridge system, and Plaintiffs sent representatives to the location to retrieve the SpeedPro manuals and related proprietary materials. During the evidentiary hearing, Plaintiffs introduced exhibits showing the type of signage work that is part of the SpeedPro system. *See, e.g.,* Exhibits 18, 22-25, 34. Plaintiffs' CEO (Paul Brewster) testified Plaintiffs have no evidence Defendants have continued to do any of that type of work since the Agreement terminated on June 8, 2026.

Defendants continue to perform work from the former SpeedPro Omaha location as 3FM now doing signage in the so-called "specialty construction" space. Nothing in the Agreement prevents 3FM from continuing to occupy or do business from the Omaha location formerly branded as SpeedPro. Defendants performed this "specialty construction" work during the time of the Agreement. The parties dispute whether Defendants' "specialty construction" work was separate and apart from their SpeedPro services, or part-and-parcel of the SpeedPro system. Further, as part of winding down the franchise, Defendants returned or provided Plaintiffs an Excel spreadsheet with client contact information, but the parties dispute whether Defendants provided or returned a full customer list. They also dispute whether Defendants have appropriately withheld their return of certain client artwork.

3

## LEGAL STANDARD

Injunctive relief is an extraordinary remedy which should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Granting such "drastic relief" is the exception rather than the rule. *United States ex rel Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989); *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). In the Tenth Circuit, a party requesting injunctive relief must establish (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction would not be adverse to the public interest; and (4) a substantial likelihood of success on the merits. *Enter. Mgmt. Consultants, Inc.*, 883 F.2d at 889.

If the injunction sought is of the "disfavored" variety, the moving party must make an especially "strong showing" that the likelihood of success and balance of harms weigh in its favor. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019); *see also O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).

## ANALYSIS, FINDINGS, AND ORDERS

For purposes of the Motion, the Court assumes (without deciding) the injunction sought is not of the disfavored variety that would require a higher burden on Plaintiffs. The Motion fails even under the usual burden. Plaintiffs have failed to

4

establish irreparable harm or a likelihood of success on the merits, as explained below.

### 1. Likelihood of Success on the Merits

Plaintiffs have failed to show a likelihood of success on the merits of their claim that Defendants are breaching the Agreement by competing in the Restricted Area. Several definitions in the Agreement are pertinent to this analysis. The Agreement defines "Restricted Area" as "any area within a radius of seventy – five (75) miles from any Studio." It defines "Studio" as "a retail SpeedPro Imaging Studio . . . which is operated by Franchisor, or by its Affiliates or franchisees *pursuant to a valid license agreement*, according to the System." (Emphasis added.) It defines "System" in relevant part as "the proprietary business system for the location, establishment, operation and promotion of Studios."

It is undisputed the Omaha location ceased existing and operating as a SpeedPro Studio as of June 8, 2026. As of that date, Defendants de-branded the location and their license agreement with Plaintiffs terminated. The Agreement does not prohibit Defendants from continuing to do business from that location. And Plaintiffs have failed to show that Defendants' work from that location, even if in direct competition with SpeedPro, is being done within 75 miles "from any Studio" as defined in the Agreement. Plaintiff has not shown a reasonable likelihood of success on this aspect of its breach of contract claim.

Nor has Plaintiff shown a reasonable likelihood of success on its other claimed breaches of the Agreement or its related claims for trademark infringement, misappropriation of trade secrets, or violation of the Anti-Cybersquatting Consumer Protection Act. The evidence before the Court is that every alleged use of the marks or alleged trade secrets[2] by Defendants ceased as of June 8, 2026. As of that date, Defendants de-branded; they provided Plaintiffs an Excel spreadsheet of client contact information; Plaintiffs physically retrieved their proprietary information and materials from Defendants; Plaintiffs cancelled Defendants' SpeedPro email access and access to Corebridge; Defendants cancelled the SpeedPro trade name and deactivated the SpeedPro Omaha Instagram account; the CEO testified Plaintiffs have no evidence Defendants have continued to do any SpeedPro work since June 8, 2026 (other than unfinished work Plaintiffs directed Defendants to complete after the fact); and Defendants do not use the "speedproomaha.com" extension for sending or

---

[2] The Court is also not convinced Plaintiffs have adequately described or demonstrated the existence of its trade secrets. This Order assumes, without deciding, the requisite trade secret status because Plaintiffs have not shown irreparable injury or a likelihood of success on the merits in any event. The Court has considered Plaintiffs' arguments regarding the inevitable disclosure doctrine but does not find they have shown a substantial likelihood of demonstrating threatened misappropriation, whether under the inevitable disclosure doctrine or otherwise. *See, e.g., Cargill Inc. v. Kuan*, No. 14-CV-2325-RM-MJW, 2014 WL 5336233, at *6 (D. Colo. Oct. 20, 2014) (". . . Cargill does not dispute that Mr. Kuan returned Cargill's information and, as such, there is no source (via paper or electronically) from which he could obtain or retrieve Cargill's trade secrets, other than what he can recall. However, no evidence was presented of what Mr. Kuan may or could recall that he may or could use to Cargill's competitive disadvantage.").

receiving e-mails and the domain does not host a public facing website and is not otherwise in use by Defendants.

Based on these facts, Plaintiff has not shown a likelihood of success on the merits of any of its claims.

### 2. Irreparable Harm

"A showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction ...." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)). "Irreparable harm ... is harm that cannot be undone, such as by an award of compensatory damages or otherwise." *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1105 (10th Cir. 2003) (citing *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986)). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)). "The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.*

To the extent Defendants' failure to return all client information (as defined in the agreement) or client artwork breaches the Agreement, Plaintiff has failed to show irreparable harm. The evidence at the hearing showed Defendants returned a

7

plethora of client contact information. There was no evidence that any of Defendants' conduct—even the so-called "dummy" contact entries—prevented Plaintiffs from contacting any particular client, especially when considering the overlapping and multiplicity of contact information for any given client on the list. And Ms. Heupel testified it is possible to obtain a client's prior artwork from the client directly.

When considering these facts and those discussed above regarding the things Defendants ceased doing or using as of June 8, 2026, Plaintiffs have failed to show any injuries they claim are beyond theoretical harms. And the Court finds monetary damages could compensate Plaintiffs for any resulting harms, to include any harms caused by difficulties it may experience, if any, in contacting clients or obtaining their prior artwork. Monetary damages could also compensate Plaintiffs for any alleged improper use of their client information by Defendants in their current business.

*        *        *

For the reasons shared above, Plaintiffs have failed to meet their burden to establish a likelihood of success on the merits or that they will suffer irreparable harm absent an injunction. The Motion is DENIED as a result.

The prior TRO is hereby dissolved and Defendants' Motion to Dissolve Ex Parte Temporary Restraining Order (Dkt. 33) is denied as moot. It is FURTHER ORDERED that the Court's Order to Show Cause (Dkt. 19) is hereby DISCHARGED.

DATED: August 3, 2026  9:48 AM

8

BY THE COURT:

S. Kato Crews
United States District Judge